**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BEAZLEY UNDERWRITING, LTD.** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 26-728** |
| | : | |
| **ASOCIACION PUERTORRIQUENOS** | : | |
| **EN MARCHA, INC.** | : | |

**McHUGH, J.**                                                                **August 4, 2026**

### MEMORANDUM

This is a declaratory judgment action brought by an excess insurance provider seeking to confirm that it need not defend or indemnify two nonprofits which it previously insured.  In 2023, Plaintiff Beazley Underwriters ("Beazley") issued an excess insurance policy ("Policy") to Defendants Associación Puertoriqueños en Marcha ("APM") and Pradera Corporation ("Pradera").[1]  In 2024, APM was sued in state court and notified Beazley four weeks after the Policy expired.  Beazley now moves for judgment on the pleadings, arguing that it is legally clear and factually undisputed that APM's notification was untimely.  But APM points to uncertainties in key portions of the Policy agreement, and at this stage I cannot conclude that Beazley's reading of the Policy is the only reasonable one.  Considering the demanding standard for judgment on the pleadings, I must deny Beazley's Motion.

---

[1] Hereinafter referred to together as "APM," based on the parties' usage in the briefing and because there is no dispute that Pradera is APM's "associated or affiliated corporation, member corporation, or subsidiary corporation." Compl. ¶ 10, ECF 1; Answer ¶ 10, ECF 13.

**I.       Facts as Pled**

APM and Pradera are Pennsylvania nonprofit corporations.  *See* Compl. ¶¶ 9-10, ECF 1. In June of 2024, they were sued in a child welfare case in the Court of Common Pleas of Philadelphia County.

This lawsuit implicated several of APM's insurance policies.  As of June 2024, their primary liability policy was one issued by the Alliance of Nonprofits for Insurance ("Primary Underlying Policy").  *See generally* ECF 1-5 at 5.  To cover liabilities above the Primary Underlying Policy's limit, APM held Beazley's excess insurance Policy.  *See id.* at 2.  Beazley's Policy had an expiration date of July 31, 2024, and all claims under the Policy had to be reported by that date.  *See id.* at 20.  However, Beazley's Policy permitted APM an extended reporting deadline of up to 30 days after the Policy's expiration date if the primary underlying policy "granted" an extension:

> All claims first made during the Policy Period and circumstances that might lead to a claim reported under the Primary Policy must be reported to the Underwriters in writing via the entity named in Item 5. of the Declarations **before the end of the Policy Period or *any additional claims reporting period granted by the Primary Policy*** provided such additional claims reporting period is no greater than thirty (30) days.

*Id.* (emphasis added).  The Primary Underlying Policy includes two provisions allowing for an extension: one that would have triggered automatically if the primary insurer canceled or did not renew APM's policy, and one that would have triggered upon agreement between APM and the primary insurer.  *See* ECF 1-7 at 154.

After the state court action was filed on June 13, 2024, APM notified their primary insurer of the suit on July 31, before the Primary Underlying Policy expired. Compl. ¶ 55; Answer ¶ 55, ECF #.  APM notified Beazley of the suit on August 28, 2024, 28 days after the Beazley Policy

expired.  Compl. ¶ 57; Answer ¶ 57.  At the time APM notified Beazley of the lawsuit, neither of the two preconditions for an extension under the Primary Underlying Policy existed.  *See* Compl. ¶¶ 33, 36; Ans. ¶¶ 33, 36 (asserting and agreeing that the primary insurer renewed APM's policy and the parties did not agree to an optional extension).

## II.   Standard of Review

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is only appropriate where the movant clearly establishes that there is no issue of fact and it is entitled to judgment as a matter of law.  *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).  Motions for judgment on the pleadings share the same legal standards as motions to dismiss.  *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).  The court may only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), and must view the facts presented in the pleadings and related documents, and the inferences to be drawn from those facts, in the light most favorable to the nonmoving party, *see Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988).

## III.   Discussion

The parties agree that APM notified Beazley of the suit after the Policy's listed expiration date, and that neither of the extension periods listed in the Primary Underlying Policy was in effect when APM notified Beazley.  This leads Beazley to argues that there is no remaining issue of fact because "claims made" insurance policies are strictly construed, and here APM indisputably notified Beazley too late.  *See* Pl.'s Br. at 9, ECF 18-1.  APM responds that the language in Beazley's Policy that applies where an underlying policy "grants" an extension is capable of more

than one meaning. *See* Defs.' Resp. at 6-12, ECF 26-1. APM also seeks to create an issue of fact on the ground that the Policy's choice of law clause specifies the nonexistent state of "DA." *Id.* at 12-13. APM's argument as to the applicable law does not withstand scrutiny, but Beazley does not meet the high bar for judgment on the pleadings, with the result that this case will proceed, governed by Pennsylvania law.

### A. Pennsylvania law governs this Action

The Policy lists "DA" as the state whose choice of law applies. Beazley describes this as a scrivener's error that should be read as "PA," *see* Br. at 8 n.1, while APM call this a genuine ambiguity requiring discovery and suggests that to find otherwise would be to reform the contract without evidence, *see* Resp. at 12-13.

Whether a contract term is ambiguous is a question of law for the court to determine. *See St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991). Terms are only ambiguous if they are "subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

This case's particular facts, as pled and documented, show no ambiguity about which state's law applies. Pennsylvania is the site of both Defendants' incorporations and principal places of business. *See* Compl. ⁋⁋ 9-10; Answer ⁋⁋ 9-10. The Primary Underlying Policy, included with the Complaint, also includes at least eight insurance policy amendments based on Pennsylvania law. *See* ANI Insurance Policy at 184, ECF 1-7. Given this set of facts, there is no other reasonable interpretation of the choice of law provision. APM's assertion that it is unclear what "DA" means fails to show a reasonable ambiguity, because "the mere fact that the parties do not agree on the proper construction does not make a contract ambiguous." *Pac. Emps. Ins. Co.*

*v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012).  "PA," the abbreviation for Pennsylvania, is  the only reasonable interpretation of the choice of law declaration in the Policy.

Second, even if the contract were ambiguous, choice of law principles would support applying Pennsylvania law.  Under the *Erie* Doctrine, a federal district court sitting in diversity applies the choice of law rules of the state in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Pennsylvania's appellate courts consider five factors to determine the law governing a contract dispute: "(a) the place of contracting; (b) the place of negotiation of contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Ario v. Underwriting Members of Lloyd's of Lond. Syndicates 33, 205 & 506*, 996 A.2d 588, 595 (Pa. Commw. Ct. 2010).  Each of these factors points to Pennsylvania as the proper choice of law to govern this action.  Judgment on the pleadings is appropriate as to this issue.

**B.  The pleadings do not indisputably support Beazley's interpretation of the policy.**

Although Beazley is correct as to the governing law, neither the Policy's language nor its structure sufficiently supports Beazley's position that there is only one reasonable reading of the policy.

Starting with the meaning of the word "granted," Beazley argues that the Policy provides an extended reporting period only when an extended period was in fact triggered by the underlying primary policy.  *See, e.g.*, Pl.'s Br. at 12.  But APM cogently points out that one meaning of "grants" is "provides for," and here the primary policy did so provide.  *See* Defs.' Resp. at 8.  APM next points to varying uses of the terms "granted," "applicable," and "applied" within a single paragraph of the Policy, and indeed within Beazley's own brief, suggesting that "granted" does

not necessarily mean "actually occurring" or "vested." *Id.* at 9-11.  Finally, the Policy refers to conditional coverage at least one other way, referring to "any claim or loss *which triggers coverage under the Underlying Policies.*" ECF 1-5 at 39 (emphasis added).  Considering these varied word choices for similar concepts, the meaning of "granted" is not clear enough to warrant judgment on the pleadings.

Turning to the policy's structure, Beazley argues that it implicitly, but clearly, suggests an extended reporting period only where one actually went into effect under the related primary policy.  *See* Pl.'s Br. at 10.  In Beazley's view, APM's reading of the Policy would create situations where the excess policy could provide coverage after the underlying policy expired, Pl.'s Reply Br. at 5-7, ECF 27, a reading it contends is unreasonable because excess policies are designed to supplement underlying policies, and as such excess policies "do not generally expand the scope of the coverage afforded." *Id.* at 6.  But the case Beazley cites for this general rule, *Kropa v. Gateway Ford*, suggests otherwise.  *See* 974 A.2d 502, 506 nn.2-3 (Pa. Super. Ct. 2009).  There, the Pennsylvania Superior Court noted excess insurance policies may sometimes offer coverage that reaches beyond the underlying policies they supplement.  *Id.*  Some excess policies are known as "following form" policies because they incorporate the terms and conditions of their underlying policies and tend to apply to a single underlying policy, whereas others offer their own terms and conditions, and may cover multiple underlying policies.  *Id.*  Consequently, not all excess insurance policies are presumptively tied to the scope of their underlying policies.

Here, it is not clear that Beazley's Policy is a "following form" policy that is strictly defined by the primary underlying policy's language. The Policy never explicitly incorporates the primary underlying policy's terms, it supplements other underlying policies, and it contains numerous additional exclusions, endorsements, and terms not found in the underlying policies.  *See generally*

ECF 1-5.  Beazley's overall structural argument—that the Policy's language and position within APM's "coverage tower" suggests an extended reporting period only where one has actually occurred in the underlying policy—is certainly plausible.  Pl.'s Reply at 6.  But Beazley cites no Pennsylvania precedent compelling the legal conclusion it seeks, and the standard for resolving a motion for judgment on the pleadings requires me to draw all inferences in the light most favorable to the *nonmoving* party.  *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005).  That rule keeps me from accepting Beazley's key premise.

## IV.    Conclusion

For the reasons set forth above, Beazley's Motion for Judgment on the Pleadings will be granted in part and denied in part.  An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge